THE POLK COUNTY SAVINGS BANK ET AL. v. THE STATE OF IOWA ET AL.

1. **Cities**: SEWER TAX ON STATE PROPERTY. Chapter 162, Laws of 1878, does not confer upon cities the power to assess a sewer tax upon property owned by the state and used for governmental purposes. *Sioux City v. Ind. Dist. of Sioux City.* 55 Iowa, 150, distinguished.

2. ———: ISSUING VOID CERTIFICATES OF SEWER TAX: LIABILITY OF CITY. Where a city, pursuant to a contract for the construction of sewers, issues to the contractors certificates of sewer tax which prove to be void, the city is liable to the contractors for the amount thereof. (Compare *Bucroft v. City of Council Bluffs*, 63 Iowa, 646.)

### *Appeal from Polk Circuit Court.*

#### THURSDAY, JUNE 10.

THE city of Des Moines caused sewers to be constructed on certain streets on which Capitol Square (which belongs to the state) fronts, and issued to the contractors who performed the work certificates of assessment against the adjacent property, including said square, and a lot belonging to the state, in payment therefor. Plaintiffs are the owners of the certificates which evidence the assessments, made for this purpose, on the property of the state. The executive officers of the state having doubts as to the liability of the state thereon, an agreed case was made under the provisions of the statute for the purpose of having that question determined; also for the purpose of determining whether the city is liable thereon in case it should be determined that the state is not liable. The circuit court adjudged that the state was liable, and entered judgment requiring the auditor of state to issue warrants for the amount of indebtedness, and the treasurer of state to pay the same out of the funds of the state in his hands. It also adjudged that the city is not liable, and dismissed the action as to it. The state appealed from the judgment against it, and plaintiffs appealed from the order dismissing the action against the city.

*Wright, Cummins & Wright*, for plaintiffs.

*A. J. Baker*, Attorney-general, for the state.

*Marcus Kavanagh, Jr.*, for the city.

REED, J.—Capitol Square is the block of ground on which the capitol building of the state is situated. It fronts on the

north on Sycamore street, on the south on Walnut street, and on the west on Ninth street. Locust street extends from Ninth, at a point opposite the middle of the west line of the square, westward to the Des Moines river. Walnut and Sycamore are parallel with it, and each extends also to the river. The state also owns a lot on the north side of Sycamore, on which is situated a building containing the steam-works and apparatus for heating the capitol building. Authority to purchase this lot was conferred on the capitol commission by chapter 138, Acts of the Seventeenth General Assembly; and by the same act the commissioners were empowered to construct a sewer from the capitol grounds to the Des Moines river. Before anything had been done, however, by the commissioners towards the construction of such sewer, the legislature, by chapter 112, Acts of the Eighteenth General Assembly, empowered them to contract with the city for the use of its sewers for the sewerage and drainage of the capitol building and grounds. The act contains the following limitations : "The commissioners shall not, in any such contract or agreement with said city, incur a liability on behalf of the state to expend more money than would be necessary to construct the necessary sewers for the capitol building independent of said city;" and "said sewer shall not cost the state more than $5,000." In pursuance of this statute the commissioners and the city entered into a contract, whereby the city agreed, in consideration of the sum of $4,850, to furnish the state the necessary and proper sewers for the sewerage and drainage of the capitol building and grounds, through the sewers of the city, from the east side of Ninth street, through Locust street and an intercepting sewer, to the Des Moines river; and to perpetually keep the same in repair for the drainage of said premises, without any other or further cost or expense to the state. The sewers referred to in the contract were subsequently completed by the city, and the sum of money named therein was paid by the state in pursuance of the contract. In 1878 the city council

adopted an ordinance constituting the city a sewerage district, and providing that the council may by resolution order the construction of a sewer in any street. This ordinance also provides that, when a sewer shall be ordered, the work of constructing the same shall be let by contract to the lowest responsible bidder, and that the contractor shall receive in payment certificates of assessment against the adjacent property; also that the city council shall assess the cost of the sewer *pro rata* according to area upon the adjacent property. After said contract was entered into, and after the payment provided for therein was made by the state, the city council ordered the construction of sewers in Sycamore and Walnut streets, and assessed a portion of the cost thereof against Capitol Square, and the said lot upon which is situated the steam-works for heating the capitol building, and issued certificates of such assessment to the contractors in payment for their work in constructing the same, and these are the certificates which are now held by plaintiffs.

I. The questions arising under the state's appeal are (1) whether the city council has the power to assess any portion of the cost of improvements of the character of those in question upon the property of the state; and, (2) if the council is vested with such power, whether it is precluded, by the agreement of the city to furnish the state drainage and sewerage for the capitol building and ground, through the Locust street sewer, and its receipt of the money paid it in consideration of its undertaking in that agreement, from assessing the cost of the Sycamore and Walnut street sewers against the property.

It is contended by counsel for plaintiffs, however, that the first question was waived by the attorney-general by the stipulation and agreement on which the cause was submitted in the circuit court. It is recited, in the written stipulation of the parties, that the claim of the state is, that by reason of the contract with the city, and the payment of said sum of $4,850, it is not liable to meet or pay the assessments made

against any of the property named, and that, in considera-tion of the amount so paid in for the use of the city sewers, as designated in the contract, the state was released from all further liability for sewer or sewerage in connection with the property named in the contract; also, that plaintiffs and the city claim that the state is liable in the amount claimed, with the interest and penalties, as provided in the certificate and ordinances and statute, anything in the contracts or claims to the contrary notwithstanding. It is also stated, in an opin-ion filed by the circuit judge, who tried the case, and which is printed in the abstract, that it was admitted on the trial that but for the contract between the state and the city the former would be liable for the amount of the assessments. This opinion, however, is no part of the record in the case, and we can give no consideration to this statement. But, looking alone at the written stipulation of the parties on which the cause was submitted, it is quite apparent that the legal proposition on which the attorney general chiefly relied in the court below was, that the state having contracted with the city to furnish the sewers necessary for the drainage and sewerage of the property in question, and having paid the city a consideration for its undertaking to furnish such sewers, it could not be charged with the cost of other sewers adjacent to that property. The judgment of the circuit court, how-ever, necessarily determines that under the law the state is chargeable with the assessments, and that the city council had the power to impose them as a charge on the property; and the questions whether the state is so liable, and whether the council possesses such power, arise necessarily out of the facts stated in the stipulation on which the cause was sub-mitted. It is therefore immaterial that the attorney-general did not claim in the circuit court that the council was not vested with that power; and, if he had expressly conceded that but for the contract the state would have been liable, it would have made no difference; for its liability, if any exists, is created by law, and could not arise out of any concession by the law officers of the state.

The question whether the city council had the power to make said assessments against the property of the state arises upon the record before us, and must be determined. In adopting the ordinance mentioned above, and in making the assessments in question, the city assumed to exercise the powers conferred upon it by chapter 162, Acts of the Seventeenth General Assembly. The city has such powers only with reference to the subject as are conferred upon it by statute; and, if the power to assess the cost of said improvement against the property of the state is not conferred by the act referred to above, it does not exist. The first section of the act empowers the council of cities of the first class to provide by ordinance for the construction of sewers, and to pay the cost of constructing the same out of the general fund of the city, or assess the same on the adjacent property, or to levy a sewerage tax within the sewerage district, out of which to pay the cost of constructing the same. Another section of the act provides that special taxes levied under it for the construction of sewers shall be payable by the owners personally at the time of the assessment, and shall be a lien upon the property so assessed, and that the property may be sold for the payment thereof in the same manner and with like effect as in case of sales for the non-payment of ordinary city taxes. It is apparent, we think, from a casual reading of the statute that the legislature never intended to confer upon cities the authority contended for in this case. It is not conferred in express terms by any provision of the act. If it had been the intention to confer such power, we would naturally expect to find some provision making it the duty of some officer or agent of the state to pay such assessments when made, and making the necessary appropriations for meeting such charges when they accrued. But no such provisions have been enacted. The power to sell the property assessed for the payment of the tax is as certainly conferred by the act as is the power to make the assessment; and, if the position of plaintiffs and

*1. CITIES: sewer tax on state property.*

the city is correct, it follows that the capitol of the state, or any of its charitable or reformatory institutions, which may be situated within cities of the first class, may be sold for the payment of such assessments, and the title of the state thereto divested. We will not presume that such a result was intended.

That cases may be found which hold that the property of the state may be subjected to such assessment is certainly true. But such cases have arisen under statutes which either expressly or by necessary implication subject the property of the state to the assessment. This is the case in *Hassan v. City of Rochester*, 67 N. Y., 528, cited and greatly relied on by counsel for the city. But, as no such statutes have been enacted in this state, the cases so holding are not applicable. We are very clear that the power to subject the property of the state to assessments of this character does not exist, in the absence of statutes conferring it.

It was held in *Sioux City v. Independent Dist. of Sioux City*, 55 Iowa, 150, that real estate belonging to a school district, and used for school purposes, was not exempt from assessments of this character under section 797 of the Code, which exempts such property from general taxation. School districts are among the agencies of the state, and the property held by them is devoted to a public use; and it is contended that the reasoning under which such property is held subject to special assessments for local improvements would lead necessarily to the conclusion that all other property of the state was subject to the same burdens. But this does not follow. The property held by these corporations, although it is devoted to a public use, is not devoted to a governmental use. It is not held by or for the state in its sovereign capacity. The corporations are made the instruments by the state for the accomplishment of one of the objects which it is empowered to accomplish. They derive their powers from the state, and are empowered by it to devote the property to the particular use which is the object of their

organization. They are authorized to incur such expense as is necessary for fitting the property for the use to which it is devoted, and to raise the funds for the payment of such expense by taxation. The construction of sidewalks and sewers is often necessary to the proper fitting of the property for use for school purposes. But such improvements, as a rule, are most conveniently and economically made in connection with the system of improvements of the town or city in which the property is situated. The power to subject the property to special assessments for these purposes is a necessary incident of the power conferred upon the municipal corporations and the duties imposed upon the school districts.

Having reached the conclusion that the city has no power to make the assessments, it is unnecessary to consider the other questions presented by the state's appeal.

II. The question arising on plaintiff's appeal, viz., whether the city is liable to plaintiffs for the amount of the certificates of assessment, does not differ in principle from that decided by this court in *Bucroft v. City of Council Bluffs*, 63 Iowa, 646. We do not deem it necessary to add to what is said in that case. The city, having contracted for the construction of the work, is responsible for its cost. The fact that it has no power to make or collect the assessment upon the property in question does not discharge it from its liability therefor.

2. ——: issuing void certificates of sewer tax: liability of city.

The judgment will be reversed on both appeals.